**SO ORDERED.**

**SIGNED this 16th day of September, 2026.**

Mitchell L. Herren
Chief United States Bankruptcy Judge

---

*DESIGNATED FOR ONLINE PUBLICATION*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE:**<br><br>**Carr's Plumbing and Maintenance, LLC,**<br><br>**Debtor.** | **Case No. 26-10101**<br>**Chapter 11** |

**Memorandum and Order Denying Provision Within Motion to Approve Compromise Seeking Deposit of Settlement Funds into Counsel Trust Account**

Chapter 11 debtors' counsel walk a tightrope when it comes to their compensation. There are significant approval and reporting requirements governing

both the hiring[1] and payment of attorneys.[2] There are also elevated risks of nonpayment since a debtor is often in dire financial straits. Understandably, when attorneys are likely to be owed significant fees for valuable work performed, they may seek creative methods for ensuring they get paid.

Here, counsel for Debtor Carr's Plumbing and Maintenance, LLC settled an adversary proceeding on Debtor's behalf. Counsel seeks deposit of funds owed to Debtor as a result of that settlement directly into counsel's trust account rather than into Debtor's general operating account. The plan is apparently that it remain in that trust account, not designated for any particular use, until needed in the future for any one of a number of possible expenses, including payment of Debtor's attorney fees. However, there is no provision in the Code authorizing a debtor's money to be kept in its counsel's trust account as some type of general, secondary debtor-in-possession operating account. As a general rule, a Chapter 11 debtor's funds should be kept in the debtor's operating accounts, subject to the debtor's reporting obligations. As a result, the provision within the motion for approval of compromise at issue here, seeking deposit of settlement funds to counsel's trust account rather than directly to the debtor or its operating account, is denied.[3]

---

[1] 11 U.S.C. § 327 (employment of professional persons); Fed. R. Bankr. P. 2014 (governing procedure for employment). Future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.

[2] § 329 (disclosure of compensation); § 330 (reasonable compensation); § 331 (interim compensation); Fed. R. Bankr. P. 2016 (governing procedural aspects for compensation and disclosure).

[3] Debtor appears by Justin T. Balbierz and Mark J. Lazzo of Mark J. Lazzo, P.A. The U.S. Trustee appears by Richard A. Kear. The Court has already entered an Agreed Order

## I. Procedural History

Debtor filed a Chapter 11 petition and shortly thereafter an order was entered approving the employment of counsel Mark J. Lazzo and Justin T. Balbierz of Mark J. Lazzo, P.A.[4] An order was also entered granting Debtor's motion to allow monthly payment of fees and expenses to counsel,[5] in accordance with D. Kan. LBR 2016.1.

Debtor initiated multiple adversary proceedings. In one, Adv. No. 26-5013, *Carr's Plumbing and Maintenance, LLC v. American Express National Bank*, Debtor sought to avoid and recover pre and postpetition transfers, seeking recovery of an aggregate amount of $14,916. Debtor also sought denial of claims filed by the bank.

Shortly after the adversary complaint was filed Debtor filed a motion in its Chapter 11 case seeking approval of a compromise related to the adversary proceeding. In the attached settlement agreement, Debtor revealed, among other details, the following term:

> [American Express National Bank] shall pay the sum of Eleven Thousand Five Hundred Dollars ($11,500.00) (the "Payment") in the precise manner [set] forth below, and said sum shall forever become the property of Debtor's bankruptcy estate (the "Estate").
>
> The Payment shall be made by check payable to "Mark J. Lazzo, P.A. Trust" and delivered [to] Debtor's counsel at the following address:

---

directing the settlement payment to be deposited in Debtor's bank account but reserving complete resolution of the issue pending the parties' briefing and the Court's ruling thereon. Doc. 162. The Court now fully resolves that remaining dispute within the motion to compromise, Doc. 134.

[4] Doc. 72.

[5] Doc. 98.

Mark J. Lazzo, P.A.
Attn: Justin T. Balbierz, Esq.
3500 N. Rock Rd.
Bldg. 300, Ste. B
Wichita, KS 67226[6]

The U.S. Trustee filed a Limited Objection to Debtor's motion, objecting to this provision.[7]

In its Limited Objection, the U.S. Trustee argued that under § 345(b) of the Code, if a debtor seeks to hold estate funds outside an insured and guaranteed account, it must show cause for, and have the court bless, the arrangement. The U.S. Trustee also argued that while § 345(a) allows a debtor to deposit or invest money of the estate to "yield the maximum reasonable net return on such money," there was no showing that depositing estate money in the law firm's trust account would yield such a return. The U.S. Trustee also argued that keeping money outside a debtor's bank account complicates reporting and transparency in the case because the funds are not reported in monthly operating reports and it is unclear when they are received and what they are spent on.

At a hearing the Court approved the motion with the exception of the issue of where to place the settlement money and set that limited issue for an evidentiary hearing.[8] The parties then filed an Agreed Order directing the settlement payment

---

[6] Doc. 134 Ex. B. p. 15 ¶ 1.

[7] Doc. 139.

[8] Doc. 155 (June 11, 2026, Courtroom Minute Sheet).

to be deposited in Debtor's bank account but reserving final resolution of the issue pending the Court's ruling.[9]

The parties then filed Trial Briefs. In the U.S. Trustee's Trial Brief,[10] it argues that several provisions of the Bankruptcy Code point to the conclusion that debtors should hold all funds in their own accounts unless a court, for cause, authorizes an exception. First, per § 363(b)(1), a debtor may use property of the estate outside the ordinary course of business only after notice to all creditors and a hearing, and payments to professionals are not in the ordinary course of business.[11] Second, per § 549(a), a debtor in possession "may avoid a transfer of property of the estate . . . that is not authorized under this title or by this Court." And third, per § 345, a debtor can spend estate funds only in the ordinary course and can deposit or invest money only if it is protected as specified, and departures from this practice must have court approval.

The U.S. Trustee argues there is no basis to depart from the standard procedure here because there is no benefit to the estate in holding a debtor's funds in the lawyer's trust account: the debtor will not receive a return on the deposit, and

---

[9] Doc. 162.

[10] Doc. 167.

[11] § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."); § 363(c)(1) ("If the business of the debtor is authorized to be operated . . . and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.").

the bankruptcy goals of accountability, transparency, and reporting are furthered by depositing funds in a debtor's insured operating account.

Debtor's Trial Brief[12] notes the settlement payment was fully disclosed to all creditors and the U.S. Trustee through its motion for approval of the compromise, and the payment diverts nothing from Debtor's operating capital (because of attorney fees accruing and anticipated to be paid) and is not recurring. Debtor argues keeping the funds in counsel's trust account does comply with § 345(b) because the money is insured within the trust account. Debtor further asserts § 363 is not applicable because there is no "use" which is what § 363 governs, and even if it was applicable, that section's notice and hearing requirements were satisfied. Finally, Debtor argues that § 549(a) would not bar the deposit of the settlement payment in the trust account because the order on the motion to compromise would also authorize the settlement payment.

## II. Findings of Fact

At the evidentiary hearing the Court heard testimony from Mark Lazzo, Debtor's counsel. He has been a practicing bankruptcy attorney for many years and has been counsel for debtors in many Chapter 11 cases. His law firm maintains a client trust account at Equity Bank, and his operating account is at that bank as well. The law firm uses QuickBooks to separate each client's money within the trust account. Mr. Lazzo keeps ledgers to identify the funds for each client in the trust account.

---

[12] Doc. 172.

Mr. Lazzo testified that Mr. Balbierz, another attorney in his office, negotiated the settlement with the approval of Debtor. Although Mr. Lazzo was confident the settlement was discussed with Debtor, the term regarding the settlement payment going directly to the trust account was not discussed. That term was proposed by counsel as a matter of efficiency.

Regarding the settlement payment, Mr. Lazzo's belief is that a settlement payment to the law firm's trust account is a standard term in settlement agreements. Mr. Lazzo considers the money to be the client's funds and his law firm's application of the funds to his fees would be governed by a fee order entered in the case allowing monthly compensation to counsel, and by any interim applications for allowance of fees. Mr. Lazzo testified that even if the settlement payment had been larger than any amount owed to the law firm by Debtor at the time, the law firm still would have sought direct payment of the settlement funds to its trust account. He testified that in that instance he would apply the settlement funds to his fees and not hold the excess longer than necessary.

Pursuant to the Agreed Order approving the compromise, the settlement payment was delivered to Debtor and deposited in the Debtor's bank account. The law firm then requested the funds for the payment of its fees from Debtor, but it took several weeks and multiple phone calls to achieve that result.

Mr. Lazzo indicated his initial intent was for the settlement payment to be added as an addendum to Debtor's monthly operating reports so that U.S. Trustee fees could be calculated correctly. But Mr. Lazzo acknowledged that in recent

Chapter 11 debtor cases his law firm has settled matters and received money in the law firm's trust account and not reported it in that debtor's monthly operating reports. Mr. Lazzo also admitted his law firm has held money from property sales in Chapter 11 debtor cases in its trust account rather than placing the money in the debtor's bank account, and that the sales proceeds and disbursements therefrom were consequently not reported on monthly operating reports. Ultimately, Mr. Lazzo acknowledged a debtor's monthly operating reports are "incomplete" without at least an addendum from the debtor's counsel detailing funds held in, and disbursed from, the attorney's trust account.

The Court also heard testimony from Drake Reynolds, Assistant Vice President and Director of Special Assets at Equity Bank. Mr. Reynolds is not the FDIC point person at the bank but is familiar with Equity Bank's records and with counsel's trust account held at that institution.

Mr. Reynolds testified that Equity Bank is an FDIC insured institution. The trust account is identified in the Bank's records as a fiduciary account. Its funds are held for the benefit of other people. On direct examination, Mr. Reynolds testified that the client funds within a trust account each have individual FDIC insurance up to the $250,000 maximum. If the settlement payment were deposited into counsel's trust account, it would be insured as long as the funds remained below the $250,000 limit.

But on cross examination, Mr. Reynolds clarified that while FDIC insurance is "automatic" for single accounts, to qualify for so-called "Pass-Through Deposit

Insurance Coverage" there are three FDIC requirements. First, there must be a true fiduciary relationship. Second, the bank's accounts must indicate the account is a fiduciary account. Third, the records kept in the usual course of business must indicate the identities of the principals and the ownership interests in the deposits. Neither Mr. Reynolds, nor Equity Bank generally, review a law firm's records to ensure compliance with FDIC Pass-Through account coverage. Mr. Reynolds also clarified that FDIC insurance covers only bank failures—not other things that could happen to accounts such as fraud or theft.

## III. Conclusions of Law

### A. Jurisdiction and Burden of Proof

The Court has jurisdiction over this core proceeding,[13] and venue is proper.[14] As the movants, Debtor has the burden of proof to show the proposed terms of the compromise are reasonable.[15]

### B. Standards Governing Approval of Compromises

Federal Rule of Bankruptcy Procedure 9019(a) governs a motion to compromise. Under that Rule, the Court may approve a compromise or settlement

---

[13] 28 U.S.C. §§ 1334(b), 157(b)(1), (b)(2)(A) and (b)(2)(L) (core proceedings include "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate").

[14] 28 U.S.C. § 1409.

[15] *In re Stewart*, 603 B.R. 138, 147 (Bankr. W.D. Okla. 2019) ("While the movants carry the burden of persuasion to provide the Court with sufficient information to conclude that the compromise falls within a reasonable range of litigation possibilities, this is not, however, a burden of proof regarding the underlying claims. It is a burden to persuade the bankruptcy court that the compromise is fair and equitable and should be approved.").

only after notice and a hearing.[16] To assess a proposed compromise, "the bankruptcy court must determine whether the compromise is fair, reasonable and in the best interests of the estate."[17]

In the Tenth Circuit, in considering whether a settlement or compromise is in the best interest of the estate, a court must consider four factors: (1) the probable success of the underlying litigation on the merits, (2) the possible difficulty in collection of a judgment, (3) the complexity and expense of litigation, and (4) the interests of creditors in deference to their reasonable views.[18]

### C. Section 345 and Debtor's Reporting Obligations

Only one aspect of the proposed compromise is challenged: that funds be deposited in counsel's trust account rather than directly to Debtor or its operating account. Counsel's proposal requires assessment of both § 345 of the Bankruptcy Code and a Chapter 11 debtor's reporting requirements.

Section 345 governs the "[m]oney of estates." It states, in pertinent part:

> (a) A trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.
>
> (b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and

[16] Fed. R. Bankr. P. 9019(a) ("On the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement. Notice must be given to: • all creditors; • the United States trustee; • the debtor; • all indenture trustees as provided in Rule 2002; and • any other entity the court designates.").

[17] *In re Stewart*, 603 B.R. at 146.

[18] *C.K. Williams, Inc. v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997).

> credit of the United States, the trustee shall require from an entity with which such money is deposited or invested--
>
> (1) a bond--
>
> . . . ; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31;
>
> unless the court for cause orders otherwise.

Therefore, under § 345(a), the debtor in possession may deposit funds to "yield the maximum reasonable net return," taking safety into account, and under § 345(b), the debtor must either use insured or bonded accounts unless the Court orders otherwise for cause.[19]

A debtor then has mandatory reporting requirements imposed by the Code. Under § 1106(a)(1), a Chapter 11 trustee is required to perform the duties required by § 704(a)(8). Section 1107 then dictates that the Chapter 11 debtor in possession has the rights and duties of a Chapter 11 trustee. Under § 704(a)(8), "if the business of the debtor is authorized to be operated," then "periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires" must be filed. And Federal Rule of Bankruptcy Procedure 2015(a)(3) requires a debtor in

---

[19] No Code-based test for "cause" exists, and bankruptcy courts have developed a "totality of the circumstances inquiry" with multiple factors to determine cause. *In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). *See also In re King Mountain Tobacco Co.*, 623 B.R. 323, 332 (Bankr. E.D. Wash. 2020) ("The inquiry ultimately is a fact- and context specific assessment of the appropriate result under the totality of the circumstances presented."); *In re Ditech Holding Corp.*, 605 B.R. 10, 20 (Bankr. S.D.N.Y. 2019) ("the Court will apply a totality of the circumstances test"). At the evidentiary hearing on this matter, counsel for Debtor expressly disclaimed asking for a "for cause" exception under § 345(b), arguing an exception is not needed because § 345(b) is not applicable.

possession to file periodic financial reports.[20] The U.S. Trustee is required to supervise the administration of Chapter 11 cases, including a debtor's performance of these duties[21] and collect a fee on disbursements.[22]

### D. The Portion of Debtor's Proposed Compromise Seeking Deposit of Settlement Funds Directly into Counsel's Trust Account is Not Reasonable

The Court rejects the proposed deposit of undesignated settlement funds into counsel's trust account. First, regardless of § 345(a), a debtor and the debtor's counsel have a fiduciary responsibility to the estate.[23] Analyzing that fiduciary responsibility in light of § 345, the Court concludes the deposit of a debtor's settlement funds into a trust account, unless the planned use of that money has already been disclosed and approved, is not permitted. Assuming each client's funds within the trust account have the requisite FDIC insurance, that satisfies only subsection (b) of § 345. Subsections (a) and (b) of § 345 must be read together.[24] And read together, both subsections of § 345 yield the conclusion that while estate assets

---

[20] Under Fed. R. Bankr. P. 2015(a)(3), a "debtor in possession must . . . (3) file: (A) the reports and summaries required by § 704(a)(8)."

[21] 28 U.S.C. § 586(a)(3).

[22] 28 U.S.C. § 1930(a)(6).

[23] *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997) ("Because of the unique nature of the bankruptcy estate, the debtor in possession is considered a fiduciary of that estate. For the same reason, courts have imposed a fiduciary duty upon counsel for the debtor in possession.").

[24] *U.S. Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 303 (3rd Cir. 1994) (subsections (a) and (b) of § 345 must be read together to give appropriate meaning to the section as a whole).

may be invested outside of the debtor's operating accounts, those outside of the ordinary course of operations must "yield the maximum reasonable net return."[25]

But more importantly, placing undesignated settlement funds directly into a trust account instead of into a debtor's operating account causes a debtor to run afoul of its reporting obligations. Each monthly operating report prepared by a debtor is intended to be all encompassing: a debtor reports cash receipts and disbursements, assets, an income statement, professional fees and expenses, and postpetition taxes.[26] A debtor must report all payments made outside the ordinary course of business and all cash receipts made each month. A chapter 11 debtor's quarterly U.S. Trustee fee required by 28 U.S.C. § 1930 is also calculated based on this monthly operating report. The failure to file monthly operating reports and the failure to pay U.S. Trustee fees can be a basis for dismissal for cause under § 1112(b).[27]

---

[25] "While the language of section 345(a) appears permissive ("a trustee in a case under this title may make such deposit or investment of the money of the estate …), the trustee still must still comply with his or her fiduciary duties—which may require the investment of funds." 3 *Collier on Bankruptcy* ¶ 345.03 (Richard Levin & Henry J. Sommer eds., 16th ed.); *see also In re Moon*, 258 B.R. 828, 837 (Bankr. N.D. Fla. 2001) (discussing line of cases in which § 345(a) was interpretated as discretionary and then later found to be mandatory and electing to follow the latter).

[26] *See In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (describing breadth, role, and importance of a Chapter 11 debtor's monthly operating report responsibility).

[27] *See* § 1112(b)(4) ("For purposes of this subsection, the term "cause" includes-- . . . (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; . . . (K) failure to pay any fees or charges required under chapter 123 of title 28; . . ."); *see also In re Whetten*, 473 B.R. at 383-84 ("Monthly reports and the financial disclosures contained within them are the life-blood of the Chapter 11 process and are more than mere busy work. Without these reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The

A proposed compromise must be in the best interests of the estate. Although it may be in the best interest of counsel to deposit settlement funds directly into a trust account to ensure the eventual prompt payment of counsel's fees, the Code envisions each debtor's funds being deposited into that debtor's operating accounts. The debtor can then report the funds moving through their accounts, pay the required U.S. Trustee fees on those funds as appropriate, and pay their counsel in due course, as permitted by the orders entered in each case. Counsel acknowledged in his testimony that placing money for an indeterminate time in his trust account has, in some of his cases, resulted in debtors' monthly reports being inaccurate because debtors do not normally account for their money sitting in or spent from their attorney's trust account. That trust account money might have been used to pay counsel or might have been used for other purposes, such as plan payments. Counsel asks the Court to approve a process of him providing an "addendum" to his clients' monthly operating reports, accounting for any such undesignated settlement funds (or sales proceeds, etc.) in his client's trust account. But an addendum from counsel is insufficient—it would not directly and timely show the flow of money into and out of a debtor's operating account via the reports that are filed and automated in the U.S. Trustee's system.

After the Court began considering this dispute Debtor's counsel disclosed it was applying for approval of fees in excess of the amount it sought to deposit in the

reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a mere technicality." (internal quotations omitted)).

trust account.[28] This does not change the outcome.[29] The settlement funds were not designated or reported to be used for any particular purpose at the time of the settlement, and there was no limitation on how long they might sit in the non-interest bearing trust account, unmentioned in Debtor's monthly reports.

Finally, the Court agrees with the U.S. Trustee that the overall structure of the Bankruptcy Code indicates debtors should hold their funds in their own accounts unless a court authorizes an exception for cause. Although attorney trust accounts are commonly used outside of bankruptcy as a place to hold settlement funds (or sale proceeds, etc.) until a later decision can be made about how to disperse the money, the bankruptcy system demands more control, monitoring, and disclosure. There is no question the settlement funds are property of the estate.[30] Under § 363(b)(1) a debtor can use property of the estate outside the ordinary

---

[28] After an initial hearing but before the evidentiary hearing, counsel filed the law firm's First Interim Application for Allowance and Payment of Attorney Fees and Expenses. Doc. 165. It sought fees from the date of filing and covered four months. For that period, the law firm incurred fees of $103,200 and expenses of $1408.22. Per the Court's order permitting monthly payment of fees and expenses, counsel had applied $24,167 from a prefiling retainer and $30,000 from a direct payment from Debtor. The U.S. Trustee objected to the First Interim Application and that objection was resolved by an agreed order. Doc. 211.

[29] Counsel candidly admitted he would have proposed the same procedure regardless of the amount of the settlement payment or the amount of fees owed, meaning much more significant funds could be sitting in the trust account for an undetermined amount of time in lieu of the debtor's operating account without regard to the fees owed to the law firm. This is especially troubling because of counsel's additional admission that the term regarding the settlement payment being sent directly to the trust account was not discussed with Debtor.

[30] § 541 (property of the estate); *Reed v. Cooper (In re Cooper)*, 405 B.R. 801, 807 (Bankr. N.D. Tex. 2009) (stating "only the trustee (or debtor-in-possession in Chapter 11) has independent standing to pursue chapter 5 avoidance actions and other estate causes of action" and noting property of the estate includes causes of action belonging to the debtor). The Court does not rely on the U.S. Trustee's § 549(a) argument in its ruling.

course of business only after giving notice to all creditors and a hearing, and payments to professionals are not in the ordinary course of business.[31] Counsel argues storing the funds in the trust account is not "use," but it is certainly a different account than the operating account and its placement there and use to pay unknown obligations of Debtor is likely to be out of the ordinary course.[32] Seeking an exception by adding a payment provision in a motion for compromise is insufficient.

## IV. Conclusion

On one hand, a narrow question is asked: should the Court approve a provision in a settlement that places Debtor's estate funds in Debtor's counsel's trust account rather than in Debtor's operating account, even if the funds might soon be transferred to counsel for the payment of fees. But the larger issue is the general propriety of someone other than the debtor holding that debtor's estate's property outside of the debtor's own accounts for an indeterminate period of time, and outside of the Code's requirements for court approval of use of a debtor's money outside of the ordinary course. Counsel asks the Court to bless the arrangement here because the trust account is a safe place to park the funds and attorney fees

---

[31] *See In re Lakeside Mgmt., L.L.C.*, No. 01-20661, 01-20678, 2001 WL 35814439, at *2 (Bankr. D. Idaho Aug. 2, 2001) ("while in reorganization, payment to professionals (including funding or replenishment of retainers) cannot be considered 'in the ordinary course of business' and thus outside the reach of § 363").

[32] *See, e.g.*, *In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997) ("The term 'ordinary course of business' generally has been accepted to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business." (internal quotations omitted)).

are, or will eventually be owed anyway. But there is no Code provision envisioning such an arrangement, likely in part due to the fact that doing so causes debtors to run afoul of their monthly reporting requirements. Although common in settlement or sale situations outside of bankruptcy, the Code requires more control and disclosure of debtor funds. Ultimately, the Court concludes the proposed settlement term is not "fair, reasonable and in the best interests of the estate"[33] as required for approval of the settlement term and denies the request.

**It is so ordered.**

###

[33] *In re Stewart*, 603 B.R. 138, 146 (Bankr. W.D. Okla. 2019).